IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANITA CONNOR,

   Plaintiff,

    v.

PUBLIC STORAGE, INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-3348-TWT

ORDER

This is an employment discrimination case. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 42]. For the reasons set forth below, the Motion is GRANTED.

I. Background

On April 22, 2002, Shurgard Storage Centers, Inc. hired Anita Connor for the job of Manager-in-Training at its Dunwoody, Georgia location. Shurgard owned and operated self-storage facilities. Connor's job duties involved selling storage space and truck rentals, maintenance of the facilities, and general store operations. On December 2, 2004, Connor injured her back while trying to move a box that was blocking access to a computer. She went to see a doctor the next day, and the doctor

told her that she had sprained a ligament in her back. After a short period of rest, Connor's doctor cleared her for part-time work and told her to avoid any strenuous activity. But the pain from her injury was so severe that Connor was unable to continue even part-time work. Connor went back to see her doctor, and the doctor told her that she would probably need surgery. On February 22, 2005, Connor took an unpaid leave of absence. Around the same time, Connor also filed a workers' compensation claim for her back injury. On May 11, 2005, Shurgard sent Connor a `letter stating that her medical, dental, disability, and life insurance benefits would soon expire and that she could continue coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). See 29 U.S.C. §§ 1161-1169. But Connor could not afford the COBRA rates and declined to continue coverage under COBRA. For the next year or so, Connor continued to receive medical treatment for her back injury, including surgery, but she remained unable to work and did not know when she could return to work.

On August 23, 2006, Shurgard Storage Centers, Inc. merged with Public Storage, Inc. Public Storage took over ownership of Shurgard's self-storage facilities, while its subsidiary company, PSCC, Inc., took over as employer of Shurgard's employees. Just before the merger, PSCC extended conditional offers of employment to Shurgard's employees. PSCC sent each employee an offer letter, which included

an arbitration agreement and a waiver and release form. The arbitration agreement stated that claims between the employee and PSCC were subject to arbitration. The waiver and release form stated that the employee waived then-existing claims that arose out of the employee's previous employment with Shurgard. Connor never responded to PSCC's letter. At some point, Connor told a human resources director at PSCC that she could not "sign [her] rights away . . . just to be employed by [PSCC]." (Connor Dep. at 193.) On January 10, 2007, PSCC sent Connor a letter stating she could not continue her employment with PSCC unless she signed the arbitration agreement and waiver and release form, and that if she did not do so by January 19, 2007, PSCC would consider her to have voluntarily resigned. On February 9, 2007, PSCC sent Connor another letter stating that they would consider her voluntary resignation as effective on February 12, 2007. At this time, Connor was still unable to work and did not know when she could return to work.

On August 10, 2007, Connor filed an administrative charge of disability discrimination with the Equal Employment Opportunity Commission. After receiving notice of her right to sue, Connor filed this action against Public Storage, Inc. and later added PSCC, Inc. as a Defendant. In her Second Amended Complaint, the Plaintiff asserts claims under the Americans with Disabilities Act (ADA) and the Employment Retirement Income Security Act (ERISA). The Plaintiff says the waiver and release

form was clearly illegal and so it could not have been the real reason PSCC fired her. The Plaintiff says that the real reason was her disability and that PSCC should have accommodated for her disability by allowing her to remain on unpaid leave of absence until she could return to work. The Plaintiff also asserts separate claims for punitive damages and declaratory relief but concedes that those claims depend on the success of her ADA claim. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., at 25.) The Defendant PSCC, Inc. now moves for summary judgment on the Plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

A.  ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to the job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A qualified individual "means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To state a prima facie case, a plaintiff must show "(1) that she has a disability; (2) that, with or without reasonable accommodations, she can perform the essential functions of the position she holds; and (3) that she was discriminated against because of her disability." Terrell v. USAir, 132 F.3d 621, 624 (11th Cir. 1998).

The Plaintiff has not shown that, with or without reasonable accommodations, she can perform the essential functions of the position she held. The Plaintiff was never able to return to work after she took an unpaid leave of absence on February 22, 2005. Even now, the Plaintiff is unable to work and cannot say when she could return to work:

> Q. Okay. Is it correct to say that as of today [April 6, 2009], sitting here right now, your medical issues have not been resolved such that you think you could come back to work now?
> A. That is correct. To say that is correct statement to say because I'm still working to get that resolved.

(Connor Dep. at 169.) "An employee who concedes that [s]he is totally disabled from working in any capacity and who requires indefinite medical leave at the time of termination is not a 'qualified individual with a disability' within the meaning of the ADA." Counts v. WenMarr Mgmt. Co., LLC, No. 1:03-CV-2775, 2005 WL 1404792, at *2 (N.D. Ga. Mar. 03, 2005).

The Plaintiff says that PSCC should have accommodated for her disability by allowing her to remain on unpaid leave of absence until she can return to work. But "an accommodation is unreasonable if it does not allow someone to perform his or her job duties in the present or in the immediate future." Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003). The ADA, therefore, "does not require an employer to grant a disabled employee an indefinite leave of absence." Counts, 2005 WL 1404792, at *2. While there are circumstances that may justify an exception to this rule, such as "[termination] immediately upon becoming disabled without a chance to use . . . leave to recover," this is not one of those cases. Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1225 n.2 (11th Cir. 1997). At the time PSCC fired the Plaintiff, she had been on unpaid leave for nearly two years. In response, the Plaintiff says that the Eleventh

Circuit "completely changed the legal landscape" on this issue when it decided Moore v. Accenture, LLP, No. 06-15650, 2007 WL 3313152 (11th Cir. Nov. 9, 2007). But the Plaintiff's interpretation of Moore is clearly wrong. She completely ignores the controlling authority of Wood and Duckett. Therefore, the Defendant is entitled to summary judgment on the Plaintiff's ADA claims and claims for punitive damages and declaratory relief.

    B.    ERISA

Section 510 of ERISA provides that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140. To state a prima facie case, a plaintiff must show "(1) that [s]he is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1223 (11th Cir. 1993).

The Plaintiff has not shown that she was discharged under circumstances that give rise to an inference of discrimination. At the time PSCC fired the Plaintiff, she did not have any medical, dental, disability, or life insurance benefits. Those benefits had expired in May 2005, and the Plaintiff chose not to continue coverage under

COBRA. (Connor Dep. at 237-38.) The Plaintiff did have workers' compensation and 401(k) benefits, but those benefits were unaffected by PSCC's decision and she continues to receive those benefits. (Id.) Because PSCC's decision had no effect on any of the Plaintiff's benefits, there is no reason to believe that PSCC "had the specific intent to interfere with the [Plaintiff's] ERISA rights." Clark, 990 F.2d at 1222. The Plaintiff says that she could have received those benefits again if she had recovered from her back injury and returned to work. But the Plaintiff cannot create an inference of discrimination "merely by showing that, as a result of the termination, [s]he was deprived of the opportunity to accrue more benefits." Id. at 1224. Therefore, the Defendant is entitled to summary judgment on the Plaintiff's ERISA claims.

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 42] is GRANTED.

SO ORDERED, this 13 day of November, 2009.


　　　　　　　　　　　　　　　　/s/Thomas W. Thrash
　　　　　　　　　　　　　　　　THOMAS W. THRASH, JR.
　　　　　　　　　　　　　　　　United States District Judge